**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JAMES G. HOWE, # K98946,**<br>**TIMOTHY CHARLES, # K03293,**<br>**JACOB KALLAL, #K95044,**<br>**TONY HARDEN, #K04116,**<br>**CHARLES BONE, #S12955,**<br>**and GEORGE NEEDS, #N17831,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**SALVADOR GODINEZ,**<br>**DR. C. THOMAS HOLT,**<br>**and ZACHARY ROEKERMAN,**<br><br>**Defendants.** | **)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)** | **Case No. 14-cv-844-SMY** |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

This *pro se* action was filed by six civilly committed sexually dangerous persons ("SDPs") at Big Muddy River Correctional Center ("Big Muddy"). Plaintiffs include James Howe, Timothy Charles, Jacob Kallal, Tony Harden, Charles Bone, and George Needs (collectively "Plaintiffs"). Plaintiffs filed the action on July 25, 2014, pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, the Rehabilitation Act ("RA"), 29 U.S.C. § 794, *et seq*., and the Illinois Sexually Dangerous Persons Act ("SDPA"), 725 ILL. COMP. STAT. 205/1.01, *et seq*. Plaintiffs claim that Big Muddy's treatment program for SDPs is underfunded, understaffed, and ineffective. Plaintiffs seek declaratory judgment and injunctive relief (Doc. 10, pp. 32-35).

At the time of filing the action, Plaintiffs failed to pay a filing fee or file a motion for leave to proceed *in forma pauperis* ("IFP Motion"). They were each required to do one or the

other. In addition, only one, i.e., Plaintiff James G. Howe, signed the complaint. On July 25, 2014, the Clerk of Court mailed each Plaintiff a letter advising him of his obligation to pay the fee or file an IFP Motion no later than August 24, 2014 (Doc. 5). On July 29, 2014, the Court entered a formal order to this effect, which also required all Plaintiffs, other than "lead" Plaintiff Howe, to advise the Court in writing of their intentions to proceed in this group action no later than August 24, 2014 (Doc. 5, pp. 5-6).

The deadline for taking action has passed. Prior to the deadline, all Plaintiffs paid a filing fee (Doc. 22). In addition, all Plaintiffs who were obligated to do so[1] confirmed that they intend to proceed in this action together (Docs. 11-15, 22). Accordingly, the complaint (Doc. 10) is now ripe for preliminary review.

**Class Certification**

Before conducting a preliminary review of the complaint under 28 U.S.C. § 1915A, however, the Court must first address the issue of class certification. Named in the case caption are six Plaintiffs, all of whom have confirmed in writing that they wish to proceed in this action together. However, Plaintiffs did not file a motion seeking class certification, and it would not have been appropriate to do so at this time. Plaintiffs do not yet have counsel to represent them, and a prisoner bringing a *pro se* action cannot represent a class of plaintiffs. *See Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 831 (7th Cir. 1986); FED. R. CIV. P. 11. Therefore, to the extent that Plaintiffs seek class certification, the request is **DENIED** without prejudice.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

According to the complaint (Doc. 10), Plaintiffs are civilly committed sexually dangerous persons ("SDPs") in Illinois. As such, they are subject to the Prison Litigation Reform Act,

[1] Plaintiff Howe was not required to provide written confirmation of his intentions to proceed in this action because he signed the complaint and was deemed to be the "lead" Plaintiff.

28 U.S.C. § 1915 *et seq*. *See Kalinowski v. Bond,* 358 F.3d 978, 978-79 (7th Cir. 2004). Therefore, the Court shall review their complaint under 28 U.S.C. § 1915A.

According to § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). After carefully considering Plaintiffs' allegations, the Court concludes that the complaint survives preliminary review under § 1915A.

**The Complaint**

According to the complaint, Big Muddy houses approximately 177 SDPs[2] "for the sole purpose of care and treatment" (Doc. 10, p. 5). The goal of the SDP program is allegedly to "treat[] and release[] [SDPs] after the briefest time in confinement" (Doc. 10, p. 4). SDPs are civilly committed and, as such, are not considered prisoners.

However, Big Muddy's treatment program for SDPs is allegedly "underfunded, understaffed, and grossly out of compliance with treatment standards set by the Sex Offender Management Board's Act" (Doc. 10, p. 3). At the state level, no liaison or advocate represents this group (Doc. 10, p. 15). The SDP program at Big Muddy does not have its own budget, but instead relies on the general prison budget for funding (Doc. 10, p. 14). As a result, the program receives insufficient allocations. Only two full-time therapists are employed to serve 177 SDPs (Doc. 10, pp. 3, 14). SDPs are not offered individualized treatment[3] to meet their individual needs (Doc. 10, p. 14). They are also offered no treatment for substance abuse or anger management problems. Their study books and treatment guides are "25 plus" years old.

SDPs are merely treated like prisoners in "a punitive, restrictive non-treatment like setting" (Doc. 10, p. 5). They are housed with inmates in the general population (Doc. 10, pp. 18-19). They are required to wear prison-issued clothing (Doc. 10, p. 16). They are fed the same food as prisoners and eat meals with the general inmate population. They are subjected to prison lockdowns, tactical operations,[4] mail restrictions, medical co-pay requirements, and personal property restrictions. They are assaulted, both physically and verbally, by other

---

[2] This number allegedly reflects the SDP population at Big Muddy on June 30, 2014.

[3] The complaint alleges that none of the six Plaintiffs receive individual therapy and instead attend 1.5 hours of licensed group therapy each week (Doc. 10, pp. 7-9, 11-12).

[4] These operations allegedly include the following "degrading, humiliating, and assaultive" acts: (1) strip searches; (2) cuffing behind the back; (3) forced marches with the head in a downward position; and (4) destruction of personal property, legal materials, or therapeutic work (Doc. 10, p. 16).

prisoners and staff (Doc. 10, p. 16). Like prisoners, SDPs are also punished with disciplinary tickets, placed in segregation, and suspended from therapy (Doc. 10, p. 17). This environment allegedly exacerbates, rather than treats, their illnesses.

SDPs often remain confined for "years longer than necessary" because they cannot satisfy the criteria for release (Doc. 10, p. 18). The treatment programs are simply not available (Doc. 10, p. 15). Further, there are "no adequate mechanisms in place to monitor [their] progress" (Doc. 10, p. 15). By way of example, the complaint alleges that Plaintiff Needs has been housed at Big Muddy since 1995 (Doc. 10, p. 12). Plaintiff Charles has been civilly committed for over sixteen years and is still in the first phase of a four phase treatment program—despite the fact that he has "continually participated, never been suspended and completed much of the book work" for the program (Doc. 10, p. 8). Finally, Plaintiff Harden was released by the Court in early 2014 but, based on a lack of transitional housing for indigent SDPs, remains confined at Big Muddy (Doc. 10, p. 10).

Plaintiffs now sue Defendants Salvador Godinez (Illinois Department of Corrections' ("IDOC") Director), Dr. C. Thomas Holt (SDP Program Administrator), and Zachary Roekerman (Big Muddy's Chief Administrative Officer) for violating the rights of SDPs under the Eighth and Fourteenth Amendments, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*., the Rehabilitation Act ("RA"), 29 U.S.C. § 794, *et seq*., and the Illinois Sexually Dangerous Persons Act ("SDPA"), 725 Ill. Comp. Stat. 205/0.01, *et seq*. Plaintiffs seek declaratory judgment and injunctive relief (Doc. 10-1, pp. 13-16).

**Discussion**

Based on the allegations in the complaint, the Court finds it convenient to divide this *pro se* action into six counts. These counts are generally consistent with the counts outlined by

Plaintiffs in their complaint. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:** **Defendants violated Plaintiffs' right to receive treatment as SDPs;**

**Count 2:** **Defendants violated Plaintiffs' right to receive treatment for their mental illnesses and disorders under the Eighth and Fourteenth Amendments;**

**Count 3:** **Defendants violated Plaintiffs' rights under the Eighth and Fourteenth Amendments by failing to adequately train or supervise their employees regarding the proper care and treatment of SDPs with mental illnesses or disorders;**

**Count 4:** **Defendants violated Plaintiffs' liberty interests under the Fourteenth Amendment by subjecting them to a punitive environment;**

**Count 5:** **Defendants violated Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA") by denying adequate program funding, reasonable housing, and access to programs;**[5]

**Count 6:** **Big Muddy's SDP program does not comply with the Illinois Sexually Dangerous Persons Act, 725 ILL. COMP. STAT. 205/1.01, *et seq*.**

Before discussing each of these claims, the Court notes that Plaintiffs are *only* seeking prospective relief, in the form of declaratory judgment and injunctive relief. Plaintiffs make no request for monetary damages against individual Defendants. All claims against Defendants Godinez, Holt, and Roekerman in their individual capacities shall therefore be dismissed without prejudice. The case instead consists entirely of official capacity claims against Defendants Godinez, Holt, and Roekerman. With this in mind, the Court will address each claim.

[5] Counts 4 and 5 in the complaint are consolidated into a single count, i.e., Count 5, herein (Doc. 10-1, pp. 3-7).

**Count 1 – Failure to Treat SDPs**

Plaintiffs are not ordinary prisoners. They have all been committed to the custody of the Illinois Department of Corrections ("IDOC") under the Sexually Dangerous Persons Act ("SDPA"), 725 Ill. Comp. Stat. 205/0.01, *et seq*. The duration of their commitment depends on their successful completion of treatment. As the Seventh Circuit explained in *Allison v. Snyder*, 332 F.3d 1076, 1078 (7th Cir. 2003), "[p]ersons charged with sex offenses in Illinois may be diverted before trial to civil confinement, if a mental illness of at least one year's duration led to the criminal conduct. Those who complete treatment successfully are released and the criminal charges dismissed." *Id.* In other words, without treatment, there is no prospect of release.

According to the complaint, Defendants have denied Plaintiffs even the most basic forms of treatment in the SDP program at Big Muddy. As a result, their confinement is unnecessarily prolonged. In *Seling v. Young*, 531 U.S. 250, 265 (2001), the Supreme Court recognized that "due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Id.* *See also Allison*, 332 F.3d at 1079. The complaint includes examples of Plaintiffs who have been confined for years without advancing through the phases of treatment, despite complying with the program requirements. Plaintiffs now claim that they have a constitutional right to treatment as SDPs, which has been violated. At this early stage in litigation, Plaintiffs shall be allowed to proceed with **Count 1** against Defendants Godinez, Roekerman, and Holt, in their official capacities.

**Count 2 – Denial of Mental Health Treatment**

Plaintiffs also claim that they have been denied treatment for the mental illnesses or disorders that led to their civil commitment at Big Muddy (Doc. 10, p. 20). The SDP program is allegedly not designed to address the many mental health, anger management, and substance

abuse issues that Plaintiffs face. Because Plaintiffs have been denied access to adequate treatment, the symptoms of their mental illness are exacerbated.

Persons who are civilly committed under the SDPA are considered pretrial detainees. *See Allison*, 332 F.3d at 1078-79. Although claims brought pursuant to § 1983, when involving detainees, arise under the Fourteenth Amendment and not the Eighth Amendment, *see Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n. 2 (7th Cir. 1999)).

Courts interpret the Eighth Amendment, as incorporated through the Fourteenth Amendment, as imposing a duty on states "to provide adequate medical care to incarcerated individuals." *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (quoting *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002)). Plaintiffs' right to receive medical care includes the right to adequate mental health treatment. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 676 (7th Cir. 2012); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) ("[T]he need for a mental illness to be treated could certainly be considered a serious medical need."); *see also Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987); *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983). In fact, the Eighth Amendment protects the mental health of prisoners no less than their physical health.

Officials violate this duty when they "display deliberate indifference to serious medical needs" of pretrial detainees. *Id.* (citing *Johnson*, 433 F.3d at 1010 (internal quotation omitted)).

Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The complaint challenges the general failure to treat Plaintiffs for their mental illnesses and disorders as violating the Eighth and Fourteenth Amendments. Based on the allegations, the Court will allow Plaintiffs to proceed with **Count 2** against Defendants Godinez, Holt, and Roekerman, but only in their official capacities.

**Count 3 – Failure to Train or Supervise**

The complaint also alleges that Defendants inadequately trained and/or supervised their employees about the proper care and treatment of SDPs, and this resulted in the deprivation of Plaintiffs' constitutional rights under the Eighth and Fourteenth Amendments (Doc. 10-1, pp. 1-2). A failure to supervise can give rise to liability under § 1983, "if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). A failure to train may give rise to liability where the inadequacy of the training amounts to deliberate indifference to the rights of persons with whom the personnel come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (discussing this claim in the context of municipal liability). Although it is not altogether clear what role Defendants played in supervising or training officials about the treatment of SDPs, the complaint includes sufficient allegations to suggest that one or more Defendants violated constitutional standards by failing to

adequately train and/or supervise Big Muddy staff. At this early stage, the Court cannot dismiss **Count 3** against Defendants Godinez, Holt, and Roekerman, in their official capacities.

**Count 4 – Punitive Conditions**

According to the complaint, Plaintiffs are subjected to a punitive environment at Big Muddy. They are forced to live alongside the regular inmate population, where they are exposed to threats of violence and actual violence, because of their status as SDPs. They are placed in segregation and isolation as punishment[6] (Doc. 10-1, p. 2). SDPs are subjected to tactical shakedowns, lockdowns, and mail rules, just like regular inmates. They are assaulted by general population inmates and correctional officers (Doc. 10, pp. 7, 9-10, 12).

As a general rule, confinement of pretrial detainees may not be punitive because "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, conditions of pretrial confinement must be "reasonably related to a legitimate governmental objective." *Id.* at 539. *See also Murphy v. Walker*, 51 F.3d 714, 717-18 (7th Cir. 1995); *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir. 1991). The complaint suggests that the conditions fall short of this standard because they do not reasonably relate to or serve a legitimate governmental purpose. Accordingly, the Court also cannot dismiss **Count 4** against Defendants Godinez, Holt, and Roekerman, based on Plaintiffs' request for declaratory judgment and injunctive relief against them.

**Count 5 - ADA & RA**

The complaint states a viable claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and/or the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794-94e. The ADA provides that "no qualified individual with a disability shall, because of that disability

[6] Plaintiff Bone was even placed in isolation following a suicide attempt; he remained in isolation for 320.5 hours, the first 48 hours of which were in the nude (Doc. 10, p. 11).

. . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA also prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. Discrimination under both statutes includes the failure to accommodate a disability. The analysis under the ADA and RA is the same in this lawsuit, except that the RA includes as an additional element the receipt of federal funds, which all states accept for their prisons. *Jaros v. Illinois Department of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012). The complaint alleges that Plaintiffs were subject to discrimination because of their mental illnesses by being deprived of access to treatment, programs, and housing at Big Muddy. The Court finds that the complaint satisfies the basic pleading requirements for an ADA and RA claim at this early stage in litigation. Accordingly, the ADA/RA claim shall proceed.

However, this claim need not proceed against every Defendant named in connection with Count 4. The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670 n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Plaintiffs have named Defendant Godinez, the IDOC director, as a Defendant. Plaintiffs shall be allowed to proceed with **Count 5** against Defendant Godinez, in his official capacity. This claim shall be dismissed against Defendants Holt and Roekerman without prejudice.

**Count 6 – Noncompliance of SDP Program with SDPA**

The complaint alleges that Big Muddy's SDP program fails to comply with the SDPA (Doc. 10-1, pp. 7-9). Plaintiffs take issue with the fact that they are housed in and around the general inmate population (Doc. 10-1, p. 8). They challenge the treatment program, itself, as failing to meet the standards promulgated by the Sex Offender Management Board. Further,

Plaintiffs argue that they should be allowed to "go at large" subject to limited supervision, and they should not be subject to parole or indefinite confinement (Doc. 10-1, pp. 8-9).

The United States Supreme Court and the Seventh Circuit have long held that "the Constitution does not compel states to follow their own laws. . . . Nor does it permit a federal court to enforce state law directly." *Allison*, 332 F.3d at 1078-79 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 U.S. 189, 202 (1989); *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Archie v. Racine*, 847 F.2d 1211, 1215-18 (7th Cir. 1988) (en banc), *cert. denied*, 489 U.S. 1065 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). *See also Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). "Although *Ex parte Young*, 209 U.S. 123 (1908), permits prospective relief against a state official to ensure future compliance with federal law, this approach does not apply to claims under state law." *James v. Madigan*, 373 Fed. App'x 619, *2 (7th Cir. 2010) (citing *Pennhurst*, 465 U.S. at 106). In addition, courts are not empowered to create new law at Plaintiffs' request; this is the role of the state legislature. Accordingly, **Count 6** shall be dismissed for failure to state a claim upon which relief may be granted.

**Preliminary Injunctive Relief**

Although Plaintiffs generally seek injunctive relief in the complaint, they draw no distinction between preliminary and permanent injunctive relief. The complaint contains a vast list of Orders that Plaintiffs are seeking from the Court. The list spans four pages. It includes, but is not limited to, requests for the following: (1) an independent investigation of the SDP program; (2) separate housing for SDPs; (3) additional training for staff; (4) additional staff; (5) a separate program budget; (6) quarterly progress reports for program participants;

(7) individualized treatment (including anger management and substance abuse treatment); and (8) a transitional treatment and housing plan (Doc. 10, pp. 14-17).

Plaintiffs have not separately filed a motion for a temporary restraining order ("TRO") or a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 that focuses their request for immediate relief on what they consider to be more pressing concerns. It is therefore unclear what immediate relief Plaintiffs are actually seeking, if any.

So that the Court can properly address any request they have for interim relief, Plaintiffs will be required to file a separate motion under Rule 65 identifying the immediate relief they seek. They should refrain from identifying this motion, or any others, as a "motion to inform." Instead, Plaintiffs should more specifically identify the pleading as a "motion for TRO" or a "motion for preliminary injunction." The motion should include sufficient allegations to support each request for relief.

In preparing the motion, Plaintiffs should remain mindful of the applicable legal standard. In order to obtain preliminary injunctive relief, whether through a TRO or a preliminary injunction, Plaintiffs must demonstrate that: (1) the underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiffs will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Plaintiffs may file a motion for TRO and/or preliminary injunction at any time they deem it necessary to do so while this action is pending.

**Pending Motions**

**1. Motion to Appoint Counsel (Doc. 2)**

Plaintiff James Howe filed a motion to appoint counsel (Doc. 2) "on behalf of Plaintiffs and class members," which shall be referred to United States Magistrate Judge **Philip M. Frazier** for a decision.

**2. Motion to Inform Court (Doc. 16)**

Plaintiffs filed a motion to inform court (Doc. 16), in which they advised the Court that the "90 plus similarly situated persons" who signed the complaint as "class members" (Doc. 10, pp. 10-13) are not actually proceeding as Plaintiffs in this action (Doc. 16, pp. 1-2). Rather, these individuals signed the complaint to demonstrate their "agreement with [Plaintiffs'] claims" (Doc. 16). This motion is hereby **GRANTED**. The Court acknowledges that the only individuals who are proceeding together as Plaintiffs in this action are Plaintiffs James G. Howe, Timothy Charles, Jacob Kallal, Tony Harden, Charles Bone, and George Needs.

**3. Motion to Inform Court (Doc. 17)**

Plaintiffs filed another motion to inform court (Doc. 17), in which they pointed out that two pages of the complaint are still missing, i.e., pages 8 and 26. This is the second time Plaintiffs have raised this issue (Doc. 7). Their previous request to add these missing pages to the complaint was granted (Doc. 9). Pursuant to the Court's Order, the Clerk did, in fact, file the missing pages along with the rest of the complaint (Doc. 10). For that reason, all references to the complaint in this Order refer to Document 10, instead of Document 1. Accordingly, Plaintiffs' motion (Doc. 17) is hereby **DENIED** as moot.

**4. Motion Requesting Assistance with Service (Doc. 18)**

Plaintiffs have also filed a motion requesting assistance with serving all defendants

(Doc. 18). This is the second time Plaintiffs have requested this assistance (Doc. 6). As previously explained by the Court in its Order dated August 5, 2014 (Doc. 9), the Court orders service of process on any Defendants remaining in a *pro se* action that is filed by a prisoner once preliminary review of the complaint under § 1915A is complete. Further, as can be seen in the "Disposition" section below, service will be ordered on all Defendants in this action. The motion is hereby **DENIED** as unnecessary.

**5. Motion to Inform Court (Doc. 23)**

Plaintiffs have also filed a motion to inform court (Doc. 23), in which they advise the Court that Defendant Holt recently received his sex offender provider license, despite administering programs and providing sex offender treatment since October 2013 without one. This motion is hereby **DENIED**. To the extent Plaintiffs wish to include additional allegations or claims within the complaint, they must file a motion seeking leave to amend their complaint under Federal Rule of Civil Procedure 15, along with a properly drafted proposed amended complaint.

**6. Motion to Inform Court (Docs. 24 and 25)**

Finally, Plaintiffs have filed two motions to inform court (Docs. 24 and 25), in which they advise the Court of recent developments in treatment, including the transfer of Plaintiff Howe from the SDP treatment wing into the general inmate population. Among other things, Plaintiffs seek injunctive relief, in the form of an order preventing Plaintiffs from being moved out of the treatment wing while this action is pending. They also seek to add a retaliation claim. These motions are **DENIED**. If Plaintiffs seek interim relief, they should refer to the section in this Order that is entitled "Preliminary Injunctive Relief" for further instructions on how to properly file a motion for this relief.

**Disposition**

The Clerk is **DIRECTED** to mail a copy of this Order to all Plaintiffs listed in the case caption.

**IT IS HEREBY ORDERED** that **COUNTS 1, 2, 3, 4,** and **5** against Defendants **GODINEZ, ROEKERMAN,** and **HOLT, in their individual capacities only,** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNT 5** against Defendants **ROEKERMAN** and **HOLT, in their official capacities,** is also **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 6** against Defendants **GODINEZ, ROEKERMAN,** and **HOLT, in their individual and official capacities,** is **DISMISSED** without prejudice to Plaintiffs bringing a claim under the SDPA in Illinois state court.

**AS TO COUNTS 1, 2, 3, 4,** and **5**, the Clerk of Court shall prepare for Defendants **GODINEZ, ROEKERMAN,** and **HOLT, in their official capacities only**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiffs. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiffs, the employer shall furnish the Clerk with the Defendant's current work address, or, if

not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiffs shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiffs shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Plaintiffs are reminded that any motion or pleading seeking relief on behalf of all Plaintiffs must be signed by all of them. *See Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 831 (7th Cir. 1986); FED. R. CIV. P. 11. Future group motions or pleadings that fail to comply with this requirement shall be stricken pursuant to Rule 11(a).

Further, any motion or pleading submitted by an individual Plaintiff must be served on all co-Plaintiffs as well as Defendants.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, including a decision on Plaintiffs' motion to appoint counsel (Doc. 2). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Frazier** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiffs, and the judgment includes the payment of costs under § 1915, Plaintiffs will be required to pay the full amount of the costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiffs are **ADVISED** that they are under a continuing obligation to keep the Clerk of Court, each opposing party, and each co-Plaintiff informed of any change in their addresses; the Court will not independently investigate their whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 1, 2014**

s/ STACI M. YANDLE
United States District Judge