IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES G. HOWE, <br> TIMOTHY CHARLES, <br> JACOB KALLAL, and <br> GEORGE NEEDS, <br><br> Plaintiffs, <br><br> vs. <br><br> SALVADORE GODINEZ, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. 14-cv-844-SMY <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiffs, civil detainees classified as "sexually dangerous persons" under the Sexually Dangerous Persons Act ("SDPA"), 725 ILCS 205/0.1, *et seq,* filed the instant action pursuant to 42 U.S.C. § 1983, alleging that Defendants, through their implementation of the Sexually Dangerous Persons Program at Big Muddy River Correctional Center, have and continue to violate their constitutional rights.  Following a bench trial, the Court granted Plaintiffs' request for a permanent injunction with respect to Counts I and II (Failure to Provide Adequate Treatment) and ordered the following permanent injunctive relief on September 6, 2021:

1. Beginning **no later than 30 days** from the entry of this Order, Plaintiffs shall receive a minimum of 7.5 hours of core group therapy per week – each core group therapy session shall last no less than 90 minutes;

2. All offense specific and didactic groups that are currently suspended shall be reinstated and permanently maintained beginning **no later than 30 days** from the entry of this Order;

3. **Within 6 months** from the entry of this Order, recovery/release evaluations shall be conducted of the plaintiffs herein by independent psychologists or psychiatrists (not employed by IDOC or Wexford).  **No later than 30 days** from the entry of this Order, Defendants shall provide Plaintiffs and the Court with a list of proposed

>    independent psychologists/psychiatrists to conduct said evaluations. Plaintiffs shall file any objections to the proposed providers within 30 days thereafter.

(Doc. 286).

Now pending before the Court is Defendants' Motion to Amend Judgment (Doc. 291), which Plaintiffs oppose (Doc. 293). For the following reasons, the Motion is **DENIED**.

## DISCUSSION

Federal Rule of Civil Procedure ("Rule") 52(b) permits a court to "amend its findings – or make additional findings – and … amend the judgment accordingly" upon a motion by a party. The moving party "must raise questions of substance by seeking reconsideration of material findings of fact or conclusions of law to prevent manifest injustice or reflect newly discovered evidence." 9 Charles A. Wright & Arthur R. Miller, *Fed. Prac. and Proc.* § 2582 (2017). A Rule 52(b) motion may not be employed to relitigate arguments lost, advance new theories, or present new evidence that could have been presented before. *Id.*

Similarly, a Rule 59(e) motion "may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). A motion to correct errors "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020) (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)).

Defendants contend the Court should amend its Judgment because: (1) portions of the injunction are overbroad in violation of the Prison Litigation Reform Act; (2) the Court erred in basing its findings on "stale" evidence and erred in admitting and relying on Dr. Cauley's expert reports; and (3) the Court erred in prohibiting Dr. Holt from testifying as an expert witness at trial.

**Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") circumscribes the scope of the Court's authority to enter an injunction in the corrections context:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626 (a)(1)(A); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Here, Defendants argue that requiring them to provide a specific number of hours of therapy treatment to Plaintiffs and requiring outside evaluators to complete Plaintiffs' recovery evaluations exceed the Court's authority under the statute.

The Due Process Clause of the Fourteenth Amendment requires state officials to provide civilly committed persons (who are being held indefinitely) with access to mental health treatment that gives them a realistic opportunity to be cured or to improve the mental condition for which they were confined. *See Youngberg v. Romeo,* 457 U.S. 307, 319–22 (1982); *Jackson v. Indiana*, 406 U.S. 715, 738 (1971). When treatment is used as a primary justification for civil commitment, fundamental fairness requires that the involuntarily civilly committed person receive treatment that will provide him with a meaningful chance to improve and win eventual release. In other words, the State serves its purpose of treating rather than punishing sexually dangerous persons by committing them to an institution expressly designed to provide psychiatric care and treatment." *Allen v. Illinois,* 478 U.S. 364, 373 (1986) ("the State serves its purpose of treating rather than punishing sexually dangerous persons by committing them to an institution expressly designed to provide psychiatric care and treatment."). Consistent with this constitutional requirement, the

Illinois Sexually Dangerous Persons Act ("SDPA") mandates that the Director of Corrections "***provide care and treatment*** for the person committed to him ***designed to effect recovery.***" 725 ILCS 205/8 (emphasis added).

Although the state enjoys wide latitude in developing treatment regimens, courts may act when there is a substantial departure from accepted professional judgment or when there has been no exercise of professional judgment at all. *See Kansas v. Hendricks*, 521 U.S. 346, 368 (1997). Based on the overwhelming evidence presented during trial and the post-trial supplements provided by the parties, the Court found that the SDPP significantly departs from professionally accepted minimum standards for treatment of sexual offenders and concluded that it must act. The Court relied significantly on the testimony of Plaintiffs' expert, Dr. Cauley, which it found to be credible and reliable.

Dr. Cauley described in detail the various ways in which the SDPP fell short of professional standards applicable to the treatment of sex offenders. With respect to group therapy, he testified (without challenge) that the national mean average for general group therapy in civil commitment programs is 7.5 hours per week of core treatment in addition to other therapeutic programming and opined that the single hour of general therapy per week provided through the SDPP is a substantial departure from accepted professional standards and objectively unreasonable; one hour of therapy does not provide a meaningful opportunity for Plaintiffs to meet any of the milestones necessary to move through the phases at an acceptable speed. He pointed out that accepted professional standards dictate holding group therapy two or three times per week for an average of two hours per session.[1]

---

[1] In their Supplement to the Court Record (Docs. 283-1, 283-2), Defendants reported that the length of group therapy increased in December 2019 from 60 minutes to 90 minutes; the number of weekly sessions did not increase. The Court found that providing SDPs a maximum of 90 minutes of group therapy per week was still significantly below the minimum acceptable number of hours to meet professional standards.

Regarding recovery evaluations, Dr. Cauley opined that the reviews do not provide an accurate conception of current or future risk and that the Wexford evaluations do not adhere to generally accepted practice or evidence-based decision making. Significantly, the Wexford largely dictate whether Plaintiffs are released from the program. The Court noted that between 2011 and the time of trial, only 22 SDPs had been discharged or released from the program, that since trial, only four additional SDPs had been recommended for release, and concluded that providing Plaintiffs with an alternate to the Wexford evaluations is necessary for them to have a realistic opportunity to be released.

Based on the above-referenced evidence, and recognizing that injunctive measures ordered against a state agency or official must be no broader than necessary to remedy a constitutional violation, the Court limited its Order to the named individual Plaintiffs only and tailored the injunctive relief to remedy the specific constitutional deprivations established by the evidence: requiring Defendants to provide Plaintiffs with hours of treatment consistent with the generally accepted standards for sex offender treatment; and to provide Plaintiffs' release evaluations to be conducted by independent psychologists or psychiatrists. Thus, the Permanent Injunction issued does not run afoul of the PLRA.

## Evidence Submitted During and After Trial

Defendants assert that the Court erred in ordering injunctive relief "solely based on stale evidence and testimony," including Dr. Cauley's expert reports and request a hearing to provide additional information regarding the treatment at Big Muddy from clinicians who work there. Defendants were granted leave to supplement the record prior to the Court's ruling and did so in March 2021. Defendants filed a Supplement (Doc. 283) which included Declarations from Jessica Stover and Heather Wright regarding new developments to the SDPP since the trial. Both Ms.

Stover and Ms. Wright were clinicians at Big Muddy at the time of trial. Ms. Stover testified during the trial and her Supplemental Declaration (as well as Ms. Wright's) were considered and referred to in the Court's Order. Defendants' motion does not provide the Court with any newly discovered evidence warranting and additional hearing.

Regarding the Court's consideration of Dr. Cauley's reports, Defendants did not seek to exclude their admission before or during trial. Moreover, the Court did not ultimately rely on the reports – it relied on the opinions Dr. Cauley expressed in his live testimony.

The Court finds no basis to modify the Order, amend its findings, or make additional findings. Accordingly, this point is denied.

### Expert Witness Disclosures

A party's obligation to identify its expert witnesses is set out in Rule 26(a)(2) which requires formal disclosure of all witnesses who are to give testimony under Rules 702, 703, or 705, irrespective of any prior disclosures of witnesses or the fact that the witnesses are "already known ... through prior discovery." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004). Defendants argue that the Court erred in precluding Dr. C. Thomas Holt from testifying as an expert witness because their failure to disclose Dr. Holt as an expert was harmless. Specifically, Defendants maintain Dr. Holt's expert status was not a surprise to Plaintiffs given that Dr. Holt was a named plaintiff who was disclosed in Defendants' initial disclosures. Defendants further argue that Dr. Holt's declaration in support of Defendants' motion for summary judgment provided Plaintiffs with the substance of Dr. Holt's expert opinions.

The Seventh Circuit rejected the premise of Defendants' "harmlessness" argument in *Musser v. Gentiva Health Services*, 356 F.3d 751 (7th Cir. 2004), specifically noting that formal disclosure of experts is not pointless. The duty to disclose a witness as an expert is not excused

when the identity of a witness who will testify as a fact witness and as an expert witness is disclosed in initial disclosures. *Id*. at 757. This is a strict and well-founded requirement: "Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial." *Id.* Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report. *Id.* at 758. The sanction of excluding testimony from a non-disclosed expert is severe, but necessary to prevent prejudice. And under Rule 37(c)(1), "exclusion of non-disclosed evidence is automatic and mandatory ... unless non-disclosure was justified or harmless." *Musser,* 356 F.3d at 758.

In this case, Defendants first disclosed Dr. Holt *as an expert witness* in their Rule 26(a)(3) pretrial disclosures filed one month before trial. The disclosure simply advised that Dr. Holt would be called "to provide expert testimony regarding the allegations in the Complaint" (Doc. 226, p. 2). The Court concluded that the untimely disclosure was not harmless:

> Defendants' failure to disclose their intent to elicit (unspecified) expert opinions from Dr. Holt prior to the filing of their Rule 26(a)(3) disclosures is not harmless. While Plaintiffs were aware of Dr. Holt's status as the administrator of the SDPP from the outset of the case, that knowledge does not equate to knowledge that Dr. Holt would offer expert opinions at trial or more importantly, what those opinions would be. Doctor Holt's Declaration submitted in support of Defendants' motion for summary judgment sets forth his credentials and areas of responsibilities as the program administrator, but no expert opinions. The unfair surprise and prejudice Plaintiffs would be subjected to if Defendants were permitted to blindside them with undisclosed expert opinions at trial is obvious and cannot be cured on the eve of trial.

(Doc. 252). The Court's ruling was totally consistent with controlling law – not a manifest error of law as Defendants contend. *See Tribble*, 670 F.3d at 760 (noting prejudice in the failure to disclose an expert even though the plaintiff knew the witness was going to testify and knew the limit of the testimony); *Karum*, 895 F.3d at 952 (rejecting the notion that "a Rule 26(a) violation

[wa]s harmless simply because the opposing party knew the witness would testify in some capacity.").

## Conclusion

For the foregoing reasons, Defendants' Motion to Amend Judgment (Doc. 289) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  February 4, 2022**

                                          **STACI M. YANDLE**
                                          **United States District Judge**