**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JACOB KALLAL, and**<br>**GEORGE NEEDS,** | ) <br> ) <br> ) |
| **Plaintiffs,** | ) <br> ) |
| | )    **Case No. 14-cv-844-SMY** |
| **vs.** | ) <br> ) |
| **SALVADORE GODINEZ, et al.,** | ) <br> ) |
| **Defendants.** | ) |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, Chief District Judge:**

Plaintiffs are civil detainees classified as "sexually dangerous persons" under the Sexually Dangerous Persons Act ("SDPA"), 725 ILCS 205/0.1, *et seq.* The Act permits the State to involuntarily commit and indefinitely confine individuals who have not been convicted of a crime, but who have been determined likely to commit acts of sexual violence in the future. Plaintiffs filed the instant action pursuant to 42 U.S.C. § 1983 and alleged that Defendants are violating their constitutional rights. They requested declaratory and injunctive relief.

Following remand, the Court issued its amended findings of fact and conclusions of law (Doc. 373). The Court also issued a two-pronged permanent injunction requiring Defendants: (1) to provide Plaintiffs with a minimum of 5 hours of core group therapy per week and that (2) the recovery/release evaluations to analyze the current and future risk the SDP poses on treatment effects rather than solely historical information (Doc. 374). Now pending before the Court are Defendants' Combined Motion to Vacate the Permanent Injunction under Rule 59(e), or Alternatively, for Relief from Judgment Under Rule 60(b) (Doc. 376), which Plaintiffs oppose (Docs. 377, 378) and Plaintiffs' Motion to Clarify (Doc. 378).

**Motion to Clarify (Doc. 378)**

Plaintiffs move for clarification as to the portion the Permanent Injunction requiring 5 hours of group therapy per week.  Plaintiffs believe this requires a minimum of 5 hours of core group therapy, while Defendants contend that any combination of core group therapy hours and other programming adding up to 5 hours per week satisfies the Order.

Relying on Dr. Cauley's opinion that the generally accepted number of hours for ***core sex offender specific group therapy*** is no less than 5 hours per week and his observation that SDPs at Big Muddy were receiving weekly core therapy far below the national average, this Court concluded the credible evidence establishes that five hours per week is the minimum acceptable number of hours for sex offender specific group therapy.

Accordingly, the Court **CLARIFIES** the Permanent Injunction and finds that providing less than 5 hours of core sexual offender specific treatment per week is a substantial departure from accepted professional standards and would violate the Permanent Injunction.

**Motion to Vacate (Doc. 376)**

Defendants move to vacate the injunction under Rule 59(e) on several grounds. Specifically, Defendants contend that the Eleventh Amendment bars all injunctive relief for Plaintiff Kallal; the order for Plaintiffs to receive a minimum of 5 hours of group therapy per week is erroneous because there is no continuing violation of federal law with respect to the amount of group therapy offered; and the order for the recovery/release evaluations to analyze the current and future risk the SDP poses on treatment effects rather than solely historical information is erroneous.

**Discussion**

To prevail on a motion for reconsideration, the movant must clearly establish a manifest error of law or fact or present newly discovered evidence.  Fed.R.Civ.P. 59(e); *Lightspeed Media*

*Corporation v. Smith,* 830 F.3d 500 (7th Cir. 2016). "Motions for reconsideration serve only a 'limited function." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). It is improper to use a Rule 59(e) motion "to advance arguments or theories that could and should have been made before the district court rendered a judgment," *Sigsworth v. City of Aurora, Ill.,* 487 F.3d 506, 512 (7th Cir. 2007) (quoting *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)), nor should a movant seek to relitigate losing arguments, *Ohr ex rel. National Labor Relations Bd. v. Latino Exp., Inc.,* 776 F.3d 469, 478 (7th Cir. 2015).

### *Plaintiff Kallal*

On April 6, 2026, Plaintiff Kallal was conditionally released from the SDPP (Doc. 375). Defendants assert Kallal's claims are barred by the Eleventh Amendment because, due to his release, he does not presently face any alleged ongoing or impending violation of law from Defendants. Plaintiffs argue that although he is not in physical custody, Kallal's status as an SDP is unchanged and he remains in the guardianship of the Director. Plaintiffs further contend that Kallal hopes not to return to Big Muddy, but the chances he will not be remanded are not zero and therefore, his claims are not moot.

Federal jurisdiction requires that a party have a "personal stake" in the litigation's outcome. This requirement persists throughout all stages of review, including the appeal. *United States v. Sanchez-Gomez*, 584 U.S. 381, 385, 138 S. Ct. 1532, 1537, 200 L. Ed. 2d 792 (2018). Thus, a court must dismiss the case as moot if an intervening circumstance removes that personal stake. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013). A party has no stake in a case when the court cannot fashion any relief that would have a meaningful impact on that party. *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S.Ct. 1017, 185 L.Ed.2d

1 (2013).  Potential injuries that are too speculative cannot serve as the source of a party's interest in a case.  *Eichwedel v. Curry*, 700 F.3d 275, 278–79 (7th Cir. 2012) (noting that "[t]he best that Mr. Eichwedel can do is to point to the *possibility* that he *might* have served a shorter period of incarceration before beginning his period of supervised release," which was not sufficient to establish an ongoing controversy).

The injunction issued by this Court required that (1) Plaintiffs shall receive a minimum of 5 hours of group therapy per week; and (2) Recovery/release evaluations shall analyze the current and future risk the SDP poses based on treatment effects rather than solely historical information. This Court cannot fashion any relief that would have a meaningful impact on Plaintiff Kallal as he has been conditionally released and is no longer being held at Big Muddy.  Plaintiffs' assertion that there is a possibility that Kallal could be remanded at some time in the future is speculative and does not demonstrate that remand is likely.

Accordingly, Defendants' motion is **GRANTED** as to Plaintiff Kallal and his claims against the Defendants for injunctive relief are **DISMISSED without prejudice as MOOT**.

### *Core Sex Offender Treatment – Prong 1*

The Prison Litigation Reform Act ("PLRA") circumscribes the scope of the Court's authority to enter an injunction in the corrections context:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626 (a)(1)(A); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012).

Defendants assert that the injunctive order for Plaintiffs to receive a minimum of 5 hours of group therapy per week is erroneous because there is no continuing violation of federal law with respect to the amount of group therapy offered.  Under § 1983, declaratory or injunctive relief is only proper if there is a continuing violation of federal law.  *Green v. Mansour,* 474 U.S. 64, 73, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).  "When there is no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers."  *Al–Alamin v. Gramley,* 926 F.2d 680, 685 (7th Cir.1991).  In this case, the Court finds a continuing violation.

Dr. Cauley described in detail the various ways in which the SDPP fell short of professional standards applicable to the treatment of sex offenders.  With respect to core sex offender group therapy, he opined that the national mean average for general group therapy in civil commitment programs is 7.5 hours per week of core treatment *in addition to* other therapeutic programming. Dr. Cauley testified that the generally accepted minimum number of core sex offender specific group therapy is 5 hours – this number does not include additional programming that may be offered.  When treatment is used as a primary justification for civil commitment, fundamental fairness requires that the involuntarily civilly committed person receive treatment that will provide him with a meaningful chance to improve and win eventual release.  Here, Defendants admit that Plaintiff Needs is only receiving 3 hours per week.  The failure to provide at least the bare minimum of generally accepted group therapy does not provide a meaningful opportunity for Plaintiff to be cured or to improve the mental condition for which he was confined.  *See Youngberg v. Romeo,* 457 U.S. 307, 319–22 (1982); *Jackson v. Indiana*, 406 U.S. 715, 738 (1971).

Recognizing that injunctive measures ordered against a state agency or official must be no broader than necessary to remedy a constitutional violation, the Court limited its Order to the named individual Plaintiffs only and tailored the injunctive relief to remedy the specific

constitutional deprivations established by the evidence: requiring Defendants to provide Plaintiffs with hours of treatment consistent with the generally accepted standards for sex offender treatment. Accordingly, the motion is **DENIED** with respect to the first prong of the Permanent Injunction.

### *Recovery/Release Evaluations – Prong 2*

Defendants next assert that Prong 2 of the Permanent Injunction is erroneous because (1) the recovery/release evaluations are outside the scope of Plaintiffs' claims related to treatment received within the SDPP; (2) a court may not order injunctive relief against a person who is not a party to the case at issue; and (3) there is no continuing violation with respect to how the evaluation are conducted.

The recovery/release evaluations are not outside the scope of Plaintiff's claims regarding the SDPP program. The overarching issues in this litigation stemmed from Defendants' violations of Plaintiff's Fourteenth Amendment rights by failing to provide adequate treatment in the SDP program at Big Muddy resulting in unnecessarily prolonged confinement. The complaint included examples of Plaintiffs who had been confined for years. "A civilly committed sex offender is entitled to 'immediate release upon a showing that [he] is no longer dangerous or mentally impaired.' *Kansas v. Hendricks*, 521 U.S. 346, 368–69 (1997)." If the mechanisms in place to ascertain Plaintiff's mental state are flawed, then Plaintiff cannot obtain release.

Here, the Court found that the recovery/release evaluations do not properly predict future behavior. Dr. Cauley opined that the release/recovery evaluations do not adhere to generally accepted practice or evidence-based decision making because they are based largely on past acts to assess the current condition of the SDP. The purpose of the recovery/release evaluation is to analyze the ***current and future risk*** the SDP poses and to ultimately make a recommendation for or against discharge or conditional release from the program. In other words, in determining

whether the petition will be granted, the central question is whether the SDP has so changed that he is no longer likely to engage in predatory acts of sexual violence. These evaluations are the primary tool that courts use to evaluate whether a civilly committed person should be conditionally released. The deficiencies in the risk assessments have turned Plaintiff's civil confinement into punitive, lifetime detentions in violation of the Due Process Clause.

Defendants next argue that this Court may not order injunctive relief against the Wexford evaluators who are not parties to this case. The injunction orders that the release/recovery evaluations should analyze the current and future risk the SDP poses based on treatment effects rather than solely historical information. The injunction is not directed at Wexford, but to Defendants who are employees of the Illinois Department of Corrections ("IDOC"), and more specifically the Director who under the Illinois Sexually Dangerous Persons Act is responsible for having the recovery/release evaluations prepared.

Finally, Defendants contend that the only practice Dr. Cauley indicated did not comply with generally accepted practice was the failure to conduct an interview with the client before providing an opinion on release. They assert that Plaintiff Needs did receive an interview during his last recovery evaluation and therefore there is no continuing violation. This statement is belied by Dr. Cauley's Supplemental Report in which he continues to opine that the recovery/release evaluations are flawed, based largely on past acts to assess the current condition of the SDP, and do not adhere to generally accepted practice or evidence-based decision making. Accordingly, the motion is **DENIED** with respect to the second prong of the Permanent Injunction.

### Conclusion

For the foregoing reasons, Defendants' Combined Motion to Vacate the Permanent Injunction under Rule 59(e), or Alternatively, for Relief from Judgment Under Rule 60(b) (Doc.

376) is **GRANTED in part and DENIED in part**.  The Motion is granted as to Plaintiff Kallal who is no longer civilly committed at Big Muddy; the motion is denied in all other respects.

**IT IS SO ORDERED.**

**DATED:  July 20, 2026**

**STACI M. YANDLE**
**Chief United States District Judge**